**Steve REED and Lee Ann Reed, Appellants–Plaintiffs,**

**v.**

**CITY OF EVANSVILLE and Evansville Sewer & Water Utility, Appellees–Defendants.**

**No. 82A05–1012–PL–768.**

Court of Appeals of Indiana.

Aug. 29, 2011.

---

Leslie C. Shively, Shively & Associates, P.C., Evansville, IN, Attorney for Appellants.

David L. Jones, Robert W. Rock, Evansville, IN, Attorneys for Appellees.

## OPINION

ROBB, Chief Judge.

### Case Summary and Issues

Steve and Lee Ann Reed appeal the trial court's order granting summary judgment to the City of Evansville and Evansville Sewer and Water Utility (collectively, the "City"). The Reeds raise one issue, which we expand and restate as three: whether the City's supplemental designated evidence must be stricken, whether the Reeds provided timely notice of their tort claims, and whether the City is otherwise entitled to judgment as a matter of law. The City raises on cross-appeal the issue of whether the trial court erred in denying its motion to strike portions of the Reeds' brief in opposition to summary judgment and supporting affidavits. We conclude that none of the City's supplemental evidence need be stricken, a question of fact remains as to whether the Reeds provided timely notice of their tort claims, the City is not otherwise entitled to judgment as a matter of law on the Reeds' claims, and the City's motion to strike was properly denied. Therefore, we reverse and remand for further proceedings.

### Facts and Procedural History [1]

■■■ In 2003, the Reeds purchased a home within the City of Evansville and the geographic service area of Evansville Sewer and Water Utility. At some point, a discussion with their neighbors led them to believe that a sewer line ran underneath their home, and in March 2007, Steve Reed inquired of the City's contract operator for its sewer system whether this was true.

The City confirmed the presence of the sewer line and obtained the Reeds consent to investigate whether it caused or was causing any environmental problems. The City's efforts included hiring John Shamo, of Preferred Environmental Standards,

---

1. Indiana Appellate Rule 46(A)(6)(a) and (b) require that the facts included in an appellant's brief be supported by page references to the record or appendix, and that they be stated in accordance with the standard of review appropriate to the order being appealed. The Reeds' statement of facts includes some citations to their Appellants' Appendix, but many key facts are not supported at all by citations, and the appendix "support" for many of the facts comes in the form of legal briefs to the trial court, the Reeds' complaint, and the chronological case summary. Generally, briefs or memoranda are not evidence for the purposes of ruling on a motion for summary judgment. *Auffenberg v. Bd. of Trustees of Columbus Reg'l Hosp.*, 646 N.E.2d 328, 330 (Ind.Ct.App.1995). Where a party refers to facts without citation to designated *evidence* in support of those facts, we need not consider those facts. *See Kozlowski v. Lake Cnty. Plan Comm'n*, 927 N.E.2d 404, 407 n. 4 (Ind.Ct.App.2010), *trans. denied; see also* App. R. 22(C) ("Any factual statement shall be supported by a citation to the page where it appears in an Appendix, and if not contained in an Appendix, to the page it appears in the Transcript or exhibits...."). Here, our summary of the facts and procedural history is based upon the designated evidence and is in accordance with our standard of reviewing appeals from an order granting summary judgment.

Inc., to determine whether mold was present. Shamo conducted his investigation on April 27, 2007, and the City conducted further investigations within a week thereafter. Shamo found mold in the crawlspace under the Reeds' home among other problems, presented his findings to the City on June 17, 2007, and over a year later issued a report to the City dated July 1, 2008. The City contends Shamo found no causal relationship between the sewer and the mold, but the Reeds contend Shamo found a causal relationship between the sewer line and the mold and did not tell them about it or tell them at all of his findings.

The City's examination also revealed a leak or breach where the Reeds' "lateral connection" exited the home. Appellants' Appendix at 96. And lastly, the City observed and informed the Reeds of plumbing leaks in the crawlspace underneath the home; though the designated evidence does not clearly state whether the City informed the Reeds of the defective lateral connection.

From May to July 2007, the City worked on sealing off the sewer line underneath the Reeds' home, repairing the lateral connection, constructing an additional lateral line at the edge of the Reeds' property, and repairing and constructing a new driveway. In or after September 2007, the City re-sodded the Reeds' lawn as well.

During roughly the same time period, in early 2007, the Reeds detected an odor in their home and hired SWAT Pest Management, Inc. ("SWAT") to investigate. SWAT issued a report to the Reeds on April 3, 2007, which indicates it found mold and that the sump pump (a device used to remove water accumulated in a basement) was not working properly.[2] SWAT attempted to remove the mold but largely failed.

The Reeds continued to have problems with mold, and in May 2008, the Reeds hired Happe & Sons Construction, Inc. ("Happe") to estimate the cost of the demolition and removal of the Reeds' current home and reconstruction of the same home in the same location. Steve Reed stated in an affidavit that "a representative of" Happe told him the "persistent mold and moisture condition was due to" the sewer line. Appellants' App. at 131. In an affidavit, Ray Happe, Vice–President of Happe, disputed this contention:

> At no time during my contact with the Plaintiff, Steve Reed, did I give an opinion as to the cause of the mold found in his home. . . . If it had been requested, I would have recommended that Mr. Reed employ an expert. . . .

*Id.* at 162.

The Reeds provided the City with notice of their tort claim in a document signed by the Reeds on June 7, 2008, and marked received by the City on June 18, 2008. The Reeds filed a complaint on July 29, 2008, which they amended on October 17, 2008 to include the City as a party defendant, and amended again in March 2009 and January 2010. As to the City, the Reeds' complaint states that as a result of the sewer being located beneath their home, they incurred and will continue to incur expenses regarding their property, including a loss of the quiet enjoyment and diminution of value of their property, and that their family has suffered health problems. The Reeds also contend they suffered property damage from the City's relocation of the sewer.

In March 2010, the City filed an answer in which among other denials and defens-

---

**2.** SWAT's report included in the designated evidence is illegible as reproduced in the appellate record. *See* Appellee's Appendix at 216.

es, it raised the affirmative defense of non-compliance with the Indiana Tort Claims Act ("ITCA"), contending the Reeds failed to provide the City with notice of their claim within 180 days after the alleged loss. In April 2010, the City filed a motion for summary judgment and designated evidence, to which the Reeds filed a brief in opposition and designated evidence. The City filed a reply brief and supplemental designated evidence, and a motion to strike portions of the Reeds' brief in opposition to summary judgment and designated evidence. The trial court denied a motion by the Reeds to strike the City's supplemental designated evidence and the City's motion to strike portions of the Reeds' opposition. In November 2010, the trial court granted the City's motion for summary judgment based solely on the conclusion that the Reeds did not provide the City with timely notice of their claim as required by the ITCA. The Reeds now appeal and the City cross-appeals. Additional facts will be supplied as appropriate.

*Discussion and Decision*

### I. Standard of Review

We review a trial court's summary judgment order de novo. *Kovach v. Caligor Midwest*, 913 N.E.2d 193, 196 (Ind.2009). We apply the same standard as the trial court: whether the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 39 (Ind. 2002). In making this determination, we construe all facts and reasonable inferences in a light most favorable to the non-moving party, *Boggs v. Tri–State Radiology, Inc.*, 730 N.E.2d 692, 695 (Ind.2000), and resolve all doubts as to the existence of a factual issue against the moving party, *Tibbs v. Huber, Hunt & Nichols, Inc.*, 668 N.E.2d 248, 249 (Ind.1996). The moving party has the initial burden to prove that there are no genuine factual issues and that judgment as a matter of law is appropriate, and only then must the non-moving party respond by setting forth specific facts in the designated evidence demonstrating the opposite is true. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind. 1992).

A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute, or where undisputed facts are capable of supporting conflicting inferences on such an issue. *Briggs v. Finley*, 631 N.E.2d 959, 963 (Ind.Ct.App.1994), *trans. denied*. We may affirm a trial court's grant of summary judgment upon any theory supported by the designated materials. *Sims v. Barnes*, 689 N.E.2d 734, 735 (Ind. Ct.App.1997), *trans. denied*. Additionally, we "may determine in the context of summary judgment a mixed question of law and fact." *Ebbinghouse v. FirstFleet, Inc.*, 693 N.E.2d 644, 647 n. 2 (Ind.Ct.App.1998), *trans. denied*.

### II. The Reeds' Motion to Strike

The Reeds first contend the City's supplemental designated evidence must be stricken because it was filed along with the City's reply memorandum and not with its original motion for summary judgment and designation of evidence.

■ We faced a similar issue in *Spudich v. N. Indiana Pub. Serv. Co.*, 745 N.E.2d 281 (Ind.Ct.App.2001), *trans. denied*, and concluded that "Trial Rule 56(E) allows either party to submit supplemental designations" of evidence for summary judgment. *Id.* at 289; *accord id.* at 287. Indeed, it is within the trial court's discretion to permit affidavits (accompanying the motion for summary judgment) to be supplemented by additional affidavits (i.e., accompanying the movant's reply). T.R.

56(E). Accordingly, we decline the Reeds' request to strike the City's supplemental affidavits.

## III. Tort Claims Notice

■■ Compliance with the ITCA is a question of law that we review de novo. *Brown v. Alexander,* 876 N.E.2d 376, 380 (Ind.Ct.App.2007), *trans. denied.* The ITCA bars tort claims against a political subdivision unless notice of a tort claim is provided within 180 days "after the loss occurs." Ind.Code § 34–13–3–8(a). A loss is said to occur, "when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Wehling v. Citizens Nat'l Bank,* 586 N.E.2d 840, 843 (Ind.1992); *see Irwin Mortg. Corp. v. Marion Cnty. Treasurer,* 816 N.E.2d 439, 447 n. 8 (Ind.Ct. App.2004) (applying the discovery rule to determine when the loss occurred for purposes of tort claim notice under the ITCA). Our supreme court has clarified that a claim subject to the discovery rule accrues when a plaintiff is informed of a "reasonable possibility, if not a probability" that an injury was sustained as a result of the tortious act of another, and that a person's "mere suspicion or speculation" as to causation of an injury is insufficient to trigger accrual. *Degussa Corp. v. Mullens,* 744 N.E.2d 407, 411 (Ind.2001) (citation omitted).

■ This discovery rule allows suit by persons who "have a fair opportunity to investigate available sources of relevant information and to decide whether to bring their claims in court within the time limitations in the statute." *Barnes v. A.H. Rob-*

*ins Co., Inc.,* 476 N.E.2d 84, 88 (Ind.1985). Similarly, a New York appellate court discussing Indiana jurisprudence has noted that it would be "fundamentally unfair" to require a plaintiff to "ascertain facts, i.e., defendants' wrongdoing, which may not yet be discovered or discoverable." *In re New York Cnty. DES Litig.,* 220 A.D.2d 34, 642 N.Y.S.2d 677, 680 (1996) (discussing *Barnes,* 476 N.E.2d 84).

The proper question is: when, in the exercise of ordinary diligence, did the Reeds learn of a reasonable possibility, if not a probability—and not by mere speculation or suspicion—that a causal relationship existed among the mold, the sewer line, and their injuries? *See Degussa,* 744 N.E.2d at 411.

Before answering this question, we pause to review a pre-*Degussa* decision, *Allied Resin Corp. v. Waltz,* 574 N.E.2d 913 (Ind.1991). In *Allied Resin,* the primary issue was when the plaintiff knew or should have discovered that his alleged injury was caused by his exposure to chemicals at the place of his employment. The plaintiff's employer argued the plaintiff knew or should have discovered the causal relationship following an early visit to a doctor, who told the plaintiff that exposure to chemicals "possibly caused" the plaintiff's condition. *Id.* at 915. Our supreme court concluded the plaintiff did not *know* of the causal relationship until a subsequent diagnosis by another doctor, and that due to conflicting designated evidence, there was a genuine issue of material fact as to whether the plaintiff *should have discovered* the causal relationship earlier.[3] This was a "fact-sensitive ques-

---

**3.** To the extent one may argue that *Allied Resin* is out-dated or inapplicable because it uses "should have discovered" as a standard and not "could have discovered," we note our supreme court's statement in *Wehling* that

there is "no[ ] significant[ ] differ[ence]" between the two standards. *Wehling,* 586 N.E.2d at 843. Any apparent difference between these phrases on their face is reconciled by *Wehling's* qualification of the phrase

tion ... appropriate for resolution by a jury with appropriate instruction from the trial court." *Id.*

■ Here, the Reeds discovered the sewer main beneath their home in early 2007. Per a report from SWAT in April 2007, the Reeds learned the crawlspace underneath their home contained mold, a disabled sump pump, and other problems. The Reeds then hired SWAT to remediate the mold and later independently addressed the problem with the sump pump. In May 2008, the Reeds hired Happe to estimate the cost of demolition and reconstruction of the home, following which Steve Reed claims he learned that there may be a causal relationship among the mold, the sewer line, and the health problems of his family.

The designated evidence shows the Reeds were aware of the sewer line below their home, the mold, and their health problems in early 2007, but no designated evidence establishes that the Reeds could have discovered a reasonable possibility of a causal relationship. The designated evidence is conflicting as to whether, if at all, the Reeds were aware that the mold found in early 2007 was the same type as that which caused their health problems or property damage or revealed in any way that it was caused by the existence of or seepage from the sewer line. In addition, although not singularly determinative, the City does not direct us to designated evidence suggesting the Reeds knew the sewer's lateral connection to their home was at one time defective.

The City argues the Reeds could have known of the possibility in the exercise of ordinary diligence. The City first points

to Ray Happe's affidavit statement that he did not tell the Reeds of a causal relationship, as support for an implicit argument that the Reeds must have learned of a possible causal relationship in early 2007 from SWAT, which provided the last professional assistance before Happe. Happe's affidavit is not determinative. Another of Happe's employees could have told the Reeds of a causal relationship, or the Reeds could have learned of a possible causal relationship in another way at any time that is not included in the designated evidence.

Terri Carl, a manager of the City's contract operator for its sewer system, stated in an affidavit that in speaking with Steve Reed in early or mid–2007, he thought that the sewer line underneath his home might be causing his wife and children to be sick. Appellants' App. at 165. This is in direct conflict with Steve Reed's affidavit statement that he first learned of the possible connection between the sewer line and the mold from Happe in 2008. This genuine issue of a material fact precludes summary judgment.

Liberally construing the designated evidence and reasonable inferences in favor of the Reeds as non-movants, we hold that a genuine issue of fact remains as to whether, in the exercise of ordinary diligence, the Reeds could have discovered a reasonable possibility of a causal relationship among the sewer line, the mold, and their health problems before mid-December 2007, which was 180 days before they provided notice in June 2008.

As to the Reeds' property damage claim against the City, the City directs us to another affidavit by Carl, stating that "[o]n

"could have discovered" with the phrase "in the exercise of ordinary diligence." *Id.* In other words, *Wehling* restated but did not significantly modify the "should have discovered" standard such that: a claim subject to

the discovery rule accrues when "the plaintiff knew, or *in the exercise of ordinary diligence could have discovered* that an injury has been sustained as a result of the tortious act of another." *Id.* (emphasis added).

November 1, 2007," City employees removed sod from the Reeds' yard, added fill materials to the trenches, re-sodded the yard, checked the new sewer line, and found no defects. *Id.* at 98. The City contends this was the last day of work on the Reeds' property and therefore the Reeds had 180 days from this date to provide tort claim notice as to any property damage. However, the affidavit is not completely clear that all of this work was done on that single day; more importantly, neither the affidavit nor any other evidence clearly indicates this was the *last* day of work on the Reeds' yard. Most importantly, and determinative here, there is a lack of designated evidence that the Reeds were aware of their property damage on or about November 1, 2007. At least some of the property damage the Reeds allege is of a type unlikely to be immediately ascertainable. For instance, the Reeds allege that following the City's work on their yard, it became sloped so that pools of water now form in their yard and water now runs toward the home. No designated evidence suggests the Reeds could have discovered this problem before mid-December 2007. The City failed to meet its burden to show summary judgment is appropriate.

## IV. Other Theories for Summary Judgment to the City

While we reverse the trial court order granting summary judgment based on our analysis of the tort claims notice issue, which was the sole basis for the trial court order, we also evaluate other grounds by which the City may be entitled to summary judgment. *See Sims,* 689 N.E.2d at 735 (stating that we may affirm a trial court's grant of summary judgment upon any theory supported by the designated materials).

### A. Immunity

■ The City is immune from liability for a loss resulting from "[t]he act or omission of anyone other than the governmental entity or the governmental entity's employee." Ind.Code § 34–13–3–3(10). To wield this statutory shield from liability, the City bears the burden to prove, *City of Valparaiso v. Defler,* 694 N.E.2d 1177, 1182 (Ind.Ct.App.1998), *trans. denied,* that its liability is based on a theory of vicarious liability for the acts or omissions of others. *Mangold v. Ind. Dep't of Natural Res.,* 756 N.E.2d 970, 976 (Ind. 2001).[4]

■ The City claims it is immune under this provision, and points to actions and omissions by the subdivision developer, builder, and the Reeds. However, the City points to no designated evidence to suggest that either the developer or the builder would be liable. As to the Reeds, the City claims the Reeds failed to maintain or properly install a sump pump and plumbing fixtures, which caused the mold and their injuries. But even if true, the City's relationship to the Reeds would not make it vicariously liable, and therefore it cannot claim immunity from vicarious liability based on its allegations of contributory negligence by the Reeds.[5] Therefore, the City is not immune from liability.

---

**4.** *Mangold* evaluated the predecessor statute, which does not materially differ as to this provision for immunity.

**5.** Our supreme court has provided a helpful list of scenarios that illustrate when a political subdivision cannot claim immunity:

[G]overnmental immunity is not clearly conferred to shield a government-employed lifeguard, otherwise liable for a swimmer's injuries by reason of the lifeguard's intoxication and inattention, upon the lifeguard's claim that the loss also resulted in part from 'the natural condition of unimproved property.' Nor does a government employee who falls asleep while driving a maintenance truck and collides with a parked car

### B. Negligence

Next, the City contends it is entitled to judgment as a matter of law as to the Reeds' negligence claim. We disagree. The City concedes its duty to repair sewers attaches after it receives notice of the defect. *See Schmitt v. City of Evansville*, 868 N.E.2d 1127, 1129 (Ind.Ct. App.2007). Following an inspection on May 1, 2007, John Rexing, the manager of planning and development for the City's contract operator of its sewers reported that "smoke tests revealed that the Reed's [sic] lateral connection to the main sewer had a leak or breach located in their lateral where it exited the [Reeds'] home." Appellants' App. at 93. While the designated evidence does not clarify what a "lateral" is, we presume for the sake of argument that a lateral refers to the sewer line directly running sewage from the Reeds' home to the main sewer line. As a result, and without further description in the record of what a lateral is or legal argument regarding who bears responsibility for upkeep and repair of a "lateral connection," this statement is sufficient to overcome the City's single contention regarding its lack of duty. "Sometimes ... the existence of a duty depends upon underlying facts that require resolution by the trier of fact." *Rhodes v. Wright*, 805 N.E.2d 382, 386

(Ind.2004). This is one of those times, and therefore the City is not entitled to summary judgment.[6]

The breach of a duty is usually an issue left to the trier of fact. *Mangold*, 756 N.E.2d at 975. "Only where the facts are undisputed and lead to but a single inference or conclusion may the court as a matter of law determine whether a breach of duty has occurred." *Id.* The designated evidence includes affidavit testimony of Mark Schweickart, a licensed inspector with twenty years of experience inspecting residential and commercial structures that has included determination of the presence and causes of harmful molds. Schweickart inspected the Reeds' home and stated:

> A large, hard mound was found at the north end of the crawlspace [under the Reeds' home].... The presence of the mound indicates that the fill material [from the sewer line] expelled from the pipe during introduction and would indicator [sic] that the pipe had not been completely filled and sewer effluent from the south end backing up under the home.
>
> * * *
>
> Based upon the affiant's observations; the information provided to Mr. Reed; review of the [mold] spore trap analysis

---

appear to be immunized from liability for such negligence merely because he alleges that an additional factor in the loss was 'the temporary condition of a public thoroughfare which results from weather.' Likewise, when a governmental entity is otherwise liable as a joint tortfeasor, no governmental immunity is clearly extended on grounds that the *other* joint tortfeasor engaged in 'the performance of a discretionary function,' failed to make a safety inspection, or made an unintentional misrepresentation.... [I]mmunity is not conferred when the circumstances designated in the subsections do not encompass or directly relate to the specific government conduct for which liability is sought to be imposed.

*Hinshaw v. Bd. of Comm'rs of Jay Cnty.*, 611 N.E.2d 637, 640 (Ind.1993) (citations omitted).

6. Further, while the City at one point contends upkeep of the lateral is the Reeds' duty, Brief of Appellees at 24, the City might have assumed a duty by attempting to repair the defect it discovered, *see* Appellants' App. at 97 (affidavit of Terri Carl stating that the City installed and connected a new lateral connection to the existing lateral, repaired a defect in the existing lateral, and installed a four inch "cleanout"). *See generally Butler v. City of Peru*, 733 N.E.2d 912, 917 (Ind.2000) (describing gratuitous assumption of duty).

dated May 29, 2008; it is the affiant's opinion that the persistent mold condition is likely the result of sewer effluent that leaked from the sewer line at the time that fill material was placed into the sewer line during the vacation of said sewer line by the City of Evansville Water & Sewer.

Appellants' App. at 143.

This affidavit alone is sufficient—when construing all designated evidence and reasonable inferences in favor of the Reeds as non-movants—to present at least a genuine issue of fact as to the City's breach of duty, and thereby preclude summary judgment to the City. The City's arguments based on conflicting designated evidence do not persuade us otherwise, but in fact highlight that this is a factual issue remaining to be determined.

■ As to proximate cause, the City correctly states that "[p]roximate cause becomes a question of law 'in plain and indisputable cases, where only a single inference or conclusion can be drawn.'" Br. of Appellees at 39 (quoting *Peters v. Forster*, 804 N.E.2d 736, 743 (Ind.2004)). The designated evidence does not present a plain and indisputable case, and given Schweickart's affidavit quoted above and other designated evidence, whether the City's acts or omissions proximately caused the Reeds' injuries remains a genuine issue of material fact.

■ The City also contends the Reeds' claims are barred by their contributory negligence. In *State v. Thompson*, 179 Ind.App. 227, 241, 385 N.E.2d 198, 208 (1979), this court explained:

The question of contributory negligence is a question of fact for the jury. Only when it can be said as a matter of law that no reasonable man would have acted as plaintiff did under the circumstances does the issue of contributory negligence become an issue to be decided by the court.

The City fails to demonstrate that no reasonable person would have acted as the Reeds did. The Reeds' omission of an home inspection prior to purchase and delayed repair of their sump pump does not satisfy this high standard for finding contributory negligence as a matter of law.

In sum, the City fails to show it is entitled to judgment as a matter of law.

## V. Cross–Appeal

An appellee may cross-appeal by raising cross-appeal issues in its brief. Ind. Appellate Rule 9(D). The City has done so here, requesting our review of the trial court's order denying its motion to strike thirteen portions of substantive material from the Reeds' brief in opposition to summary judgment and supporting affidavits.

■ The following principles guide our consideration of the City's request.

The decision to admit or exclude evidence lies within the sound discretion of the trial court. The trial court's determination is afforded great discretion [sic] on appeal. To that end, we will not reverse the trial court's decision absent a showing of manifest abuse of discretion. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it.

Affidavits in support of or in opposition to a motion for summary judgment are governed by Indiana Trial Rule 56(E), which provides, in relevant part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." The requirements of T.R. 56(E) are mandatory; hence, a court

considering a motion for summary judgment should disregard inadmissible information contained in supporting or opposing affidavits. Further, the party offering the affidavit into evidence bears the burden of establishing its admissibility.

*City of Gary v. McCrady,* 851 N.E.2d 359, 363 (Ind.Ct.App.2006) (citations omitted).

We address the City's cross-appeal because we reverse the trial court's order granting summary judgment to the City, but at the same time, we limit our review of the thirteen portions that the City challenges to only those which could potentially alter the outcome of this appeal. *Cf. French v. Hickman Moving & Storage,* 400 N.E.2d 1384, 1387 (Ind.Ct.App.1980) (stating a trial court's failure to strike improper portions or entire affidavits as designated evidence for purposes of summary judgment is harmless error when it does not result in prejudice to the opposing party). This limited review is akin to our customarily disregarding cross-appeals when we affirm the trial court's judgment.

■■■■■ We first consider the City's challenge to the Reeds' assertion in their brief in opposition to summary judgment that only in April 2008 did they first become aware that the mold might have been caused by the sewer. The City characterizes this assertion as self-serving, but a brief in opposition should advocate the party's position, and accordingly can be "self-serving" so long as it is based on the designated evidence. In some sense, all evidence and legal argument is self-serving because it advances a party's position; without more, this is not a basis to exclude relevant evidence, and an especially improper basis to exclude portions of a brief in opposition to summary judgment. To the extent it relies on evidence that is "self-serving," "[t]he self-serving aspect of such evidence only affects its weight."

*Am. United Life Ins. Co. v. Peffley,* 158 Ind.App. 29, 37, 301 N.E.2d 651, 656 (1973), *rejected on other grounds by C.T.S. Corp. v. Schoulton,* 270 Ind. 34, 38, 383 N.E.2d 293, 295 (1978).

■■■■ The City also challenges the evidentiary basis for this statement, Steve Reed's deposition testimony, as improper hearsay. However, the Reeds did not offer this statement to prove the truth of the matter asserted—that the sewer caused the mold. The Reeds referred to this statement in their brief in opposition as evidence of *when they became aware* of a possibility, which does not bear on whether that possibility is indeed a reality. Further, an affidavit that includes hearsay may be considered during summary judgment so long as the substance of the affidavit would be admissible in another form at trial. *Reeder v. Harper,* 788 N.E.2d 1236, 1241–42 (Ind.2003). Steve Reed certainly could testify at trial to his state of mind, when he first became aware the sewer caused the mold.

The City also challenges the affidavit of Mark Schweickart, contending it is speculative, based on hearsay, beyond Schweickart's expertise, and beyond his personal knowledge. Before discussing the City's specific challenges, we note our supreme court's recent comment, which validates our reluctance to exclude Schweickart's affidavit because the City disagrees with the statements therein:

It is quite ordinary and not at all surprising that the parties' affidavits or other Rule 56 materials compete with conflicting claims about the facts. Affidavits submitted in support of or in opposition to a motion for summary judgment may be stricken for a variety of reasons. But a difference of opinion about what the facts are alleged to be is not one of them. . . . [W]hen the submissions show that material facts are in

dispute then summary judgment should be denied.

*Kroger Co. v. Plonski,* 930 N.E.2d 1, 5–6 (Ind.2010).

■■■ The crux of the City's challenge is to Schweickart's credentials as an expert, and whether his affidavit and attachments satisfy the requirements of Indiana Evidence Rule 702 governing qualification of experts. The question of whether a witness qualifies as an expert rests within the sound discretion of the trial court. *Creasy v. Rusk,* 730 N.E.2d 659, 669 (Ind.2000). Rule 702 provides that one may be qualified as an expert if his "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Evid. R. 702(a). A witness may be "qualified as an expert by knowledge, skill, experience, training, or education," *id.,* even if possessing only one characteristic, and even by practical experience alone, *Creasy,* 730 N.E.2d at 669.

■■■ In addition to various certifications regarding home and environmental inspections, Schweickart states that he has twenty years of experience in inspecting residential and commercial structures to determine the presence and causes of harmful molds. With this background, the trial court did not abuse its discretion in denying the City's motion to strike Schweickart's affidavit.

■■■ As a qualified expert, Schweickart personally visited the Reeds' home to inspect it, and based on his personal observations, his consideration of hearsay statements by SWAT to Steve Reed (which is a permissible consideration for experts, *see* Evid. R. 703), and a mold spore trap analysis conducted by another professional, Schweickart provided an opinion on the likely cause of the mold. The fact that Schweickart personally observed the site

in 2010, and not sooner, may affect the weight of his testimony, but not its admissibility. To the extent the City challenges Schweickart's affidavit as lacking essential detail, we note that a lack of detail might affect the weight and credibility of an opinion and not its admissibility. *See Jordan v. Deery,* 609 N.E.2d 1104, 1111 (Ind.1993). The trial court properly did not strike Schweickart's affidavit.

### Conclusion

We conclude that the City's supplemental designated evidence need not be stricken, a genuine issue of material fact remains as to whether the Reeds provided timely notice of their tort claims, the City is not otherwise entitled to judgment as a matter of law, and the City's motion to strike was properly denied. Consequently, the trial court's order granting summary judgment to the City is reversed and this case is remanded for further proceedings.

Reversed and remanded.

NAJAM, J., and CRONE, J., concur.