## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 20 2017, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

James E. Ayers
Wernle, Ristine & Ayers
Crawfordsville, Indiana

ATTORNEY FOR APPELLEE

Ian L. Stewart
Stephenson Morow & Semler
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Donald Miller and Dorothy Miller,

*Appellants-Plaintiffs*,

v.

Crawfordsville Electric Light and Power and City of Crawfordsville,

*Appellees-Defendants*.

September 20, 2017

Court of Appeals Case No.
54A01-1608-PL-2048

Appeal from the Montgomery Circuit Court

The Honorable Harry A. Siamas, Judge

Trial Court Cause No.
54C01-1409-PL-767

**Brown, Judge.**

Donald and Dorothy Miller appeal the trial court's order dismissing their complaint and raise two issues which we revise and restate as whether the court erred in dismissing their complaint.[1] We affirm.

### Facts and Procedural History

On June 20, 2013, Bryan Gee, who was employed as a line clearance supervisor for Crawfordsville Electric Light and Power ("CELP"), a municipal utility owned by the City of Crawfordsville (the "City"), went onto certain real property on Main Street in Crawfordsville, Indiana, and applied herbicide to trees. The property was conveyed to the Miller's on August 9, 2013. The herbicide was "applied as a basal bark application which entails spraying the herbicide with a hand held sprayer or backpack sprayer around the diameter of the tree of about sixteen inches to the earth." Transcript at 5. Gee wore a backpack sprayer to apply the herbicide and completed a daily application report. He met with Donald Miller in the later part of July 2013, "walked the property and looked at the trees that had been affected by the herbicide and spoke with him about his concerns," and offered to "take down the trees and clean them up free of charge . . . and then also give him a voucher to the local Pro-Green." *Id.* at 9. Gee observed that, at that point, the trees "looked dead, browned out."[2] *Id.* He met with Donald Miller again a couple of weeks later

---

[1] The appellants' brief indicates that Donald Miller is now deceased.

[2] When asked at the evidentiary hearing if he would agree that he killed five trees, Gee responded affirmatively.

and "told him that . . . was as far as [he] could go with offering him the taking down the trees and cleaning them up and a voucher." *Id.* at 10.

[3] In August 2013, Robert Stephens, who was the operations superintendent for CELP at the time, met and spoke with the Millers, and offered payment and "to remove the trees and clean up the damaged trees."[3] *Id.* at 17. The trees were scheduled to be cut down on August 26, 2013. However, prior to the scheduled removal, Donald Miller called and left a message for Stephens stating "that the agreement that [they] had to remove all the trees that were damaged and for the compensation that was offered was no longer agreeable and that he wanted to speak to [Stephens's] manager." *Id.*

[4] On August 29, 2013, Donald Miller, Stephens, and Phillip Goode, the General Manager for CELP, "walked the property to again look at the damage and discuss a resolution" but were unable to reach an agreement. *Id.* at 19. Donald Miller pointed out the trees with the brown leaves as they walked the property. On August 30, 2013, Stephens took photographs at the property showing the power line and the dead trees as indicated by their brown leaves and sent an email with the photographs attached to Goode so that CELP could forward them to its attorney.

---

[3] When asked at the evidentiary hearing "[w]hen you were there did you make a personal inspection to see that there were five trees and only five trees that had been killed," Stephens replied "I made an inspection of the trees that Mr. Miller identified and myself. I couldn't tell you the exact count," and when asked "[f]ive sound about right," Stephens answered "[i]t's probably in the area, five six." Transcript at 29.

On March 3, 2014,[4] the Millers filed a Notice of Claim Against Political Subdivision and served it upon CELP. The notice stated that, "on or about the 13th day of September 2013 [CELP] did trespass onto the property of Donald and Dorothy Miller . . . where they proceeded to by means of chemical treatment, destroy several trees located on the property" and "thereafter did also fail to remove the dead trees and stumps and clean up the residential property after such destruction." Appellants' Appendix Volume II at 47; Appellees' Appendix Volume II at 33. Nathan Miller, a friend of Donald and Dorothy Miller, met with Donald Miller and observed the grove in the Millers' back yard in the spring of 2014. Nathan Miller observed that, as the area was greening, several of the trees throughout the entire grove were dead, and noticed "[t]he failure to bud and the tops of them started coming apart, the tops of the trees." Transcript at 42. On May 5, 2015, he observed the grove again and counted eighteen dead trees on the property.[5]

Meanwhile, on September 19, 2014, the Millers filed a complaint alleging that, "on or about the 13th day of September 2013, the agents and employees of [CELP] did trespass" onto their property, that "the employees of [CELP] did then and there by means of chemical treatment kill several trees located on the

---

[4] The trial court's August 1, 2016 order indicates the Millers filed their notice of claim on March 3, 2014. In its brief, CELP states that "the stamp marks on the envelope indicate that it was not mailed until March 10, 2014," but that "for purposes of this appeal it will be assumed the notice was served on March 3, 2014." Appellees' Brief at 8 n.1.

[5] When asked at the evidentiary hearing where the trees were located relative to the power line, Nathan Miller testified "[t]hey were all, every one of the trees was beyond fourteen feet which is the easement from the middle of the line." Transcript at 44.

property," and that the actions of CELP "caused damage to the property owners, for loss of value of said trees and the cost to remove debris." Appellants' Appendix Volume II at 6-7. CELP filed a motion for summary judgment arguing in part that the Millers' complaint failed as a matter of law because they did not file a timely notice of claim as required by Ind. Code § 34-13-3-8 together with designated evidence, and the Millers filed a response and designated evidence. The court entered an order denying CELP's motion for summary judgment, finding that resolution of the issue of the timeliness of the Millers' tort claim notice involved credibility of witnesses and weight of testimony and scheduling an evidentiary hearing on the issue.

[7] On July 27, 2016, the court held the scheduled evidentiary hearing at which it heard testimony from Gee, Stephens, Nathan Miller, and Dorothy Miller, admitted exhibits, and took the matter under advisement. Gee testified that the materials he sprayed were already mixed, that he was not familiar with the characteristics of the materials and had not studied their chemical characteristics, and that he had an applicator's license. He indicated that he did not have a conversation with Donald Miller about the way herbicide worked or the amount of time it would take for the herbicide to become inert or ineffective, nor did he know how long it would take to become ineffective. When Stephens was asked if he knew how the chemicals worked, he testified he has not been licensed or trained in how the chemicals are put together. When asked if he was aware of the limits of the effect of the chemicals in terms of how long they last, how they travel through the ground, and what they kill, Stephens

replied "[t]hat's a basal bark treatment so my limited understanding is that it's for that tree only, but no beyond that I've not been trained in that." Transcript at 28. Nathan Miller testified that he and Donald Miller collected samples from the ground to be tested by a laboratory, and that he started noticing changes in the grove in the spring of 2014 including and the failure of the trees to bud.

[8] On August 1, 2016, the trial court entered an order dismissing the Millers' complaint on the basis that they had not timely filed their notice of claim. The order provides in part:

> The evidence establishes that the injury occurred in June 2013 and the Millers knew about the injury no later than August 2013. Mr. Miller had at least five meetings with CELP representatives in August 2013. Mrs. Miller was present at least at the beginning of some of those meetings. Mr. Miller walked the easement with the CELP representatives and they discussed removing the five dead trees and cleaning up the site as well as compensation. Mr. Miller refused settlement and on August 29, 2013 told Stephens and Goode of CELP that he was referring the matter to his attorney to file suit. Based on this evidence clearly the Millers failed to comply with the time requirements of I.C. 34-4-16.5-7 (now I.C.34-13-3-8).
>
> * * * * *
>
> The Millers knew that CELP had sprayed herbicide on some of their trees and that quickly these trees died. They were concerned that their damages were more than what CELP offered to fix so they elected suit rather than settlement. All of this was known to them prior to August 30, 2013. . . . It is not necessary that the Millers knew the extent of the damage or even that the extent of the damage was ascertainable. The law requires only that some ascertainable damage has occurred.

> Based on the foregoing the Court finds that [the Millers'] claim is barred because they failed to file their tort claim notice with [CELP] within 180 days of the date that they became aware of their loss pursuant to I.C. 34-4-16.5-7 (now I.C.34-13-3-8).

Appellants' Appendix Volume II at 116-118 (citation omitted).

## *Discussion*

[9] The issue is whether the trial court erred in dismissing the Millers' complaint based on Ind. Code § 34-13-3-8 of the Indiana Tort Claims Act ("ITCA").[6] The Millers maintain that there were two discrete events, the first of which consisted of the death of six trees in the fall of 2013, and the second consisted of the death of additional trees in the spring of 2014 and later, and argue their notice of claim was timely as to the second group. They further argue that there is nothing an earlier tort claim notice would have provided CELP to assist it to timely investigate the claim for the second group of trees killed. They also assert that the trial court failed to recognize that inverse condemnation may be an alternate claim which justifies relief.

[10] CELP and the City argue that the Millers were aware of ascertainable damages by August 2013, knew of the application of herbicide, and knew that as a result of the herbicide application there were dead trees on the property. They assert that the Millers' alleged damages can be traced back to one event, the June 20,

---

[6] The ITCA is found at Ind. Code §§ 34-13-3-1 through -25.

2013 herbicide application. They also argue that the Millers never alleged below, and thus have waived, any inverse condemnation claim.

[11] The Millers did not present a claim of inverse condemnation in their complaint and do not point to the record to show they raised the claim at the evidentiary hearing. Accordingly, they have waived any inverse condemnation claim. *See Plank v. Cmty. Hosps. of Ind., Inc.*, 981 N.E.2d 49, 53 (Ind. 2013) ("[A]ppellate review presupposes that a litigant's arguments have been raised and considered in the trial court."); *Franklin Bank & Trust Co. v. Mithoefer*, 563 N.E.2d 551, 553 (Ind. 1990) ("A party cannot change its theory and on appeal argue an issue which was not properly presented to the trial court.").

[12] The ITCA provides that a tort claim against a political subdivision is barred unless notice is filed with the governing body of that subdivision within 180 days after the loss occurs. Ind. Code § 34-13-3-8; Ind. Code § 34-13-3-1; *Waldrip v. Waldrip*, 976 N.E.2d 102, 110 (Ind. Ct. App. 2012). A loss occurs for purposes of the ITCA when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another. *Waldrip*, 976 N.E.2d at 110 (citing *Reed v. City of Evansville*, 956 N.E.2d 684, 691 (Ind. Ct. App. 2011) (citing *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840, 843 (Ind. 1992); *Irwin Mortg. Corp. v. Marion Cnty. Treasurer,* 816 N.E.2d 439, 447 n.8 (Ind. Ct. App. 2004) (applying the discovery rule to determine when the loss occurred for purposes of tort claim notice under the ITCA))*, trans. denied*). The Indiana Supreme Court has clarified that a claim subject to the discovery rule accrues when a plaintiff is informed of a reasonable

possibility, if not a probability, that an injury was sustained as a result of the tortious act of another, and that a person's mere suspicion or speculation as to causation of an injury is insufficient to trigger accrual. *Reed*, 956 N.E.2d at 691 (citing *Degussa Corp. v. Mullens*, 744 N.E.2d 407, 411 (Ind. 2001), *reh'g denied*). The Court has held that, for an action to accrue, it is not necessary that the full extent of the damage be known or even ascertainable, but only that some ascertainable damage has occurred. *Cooper Indus., LLC v. City of S. Bend*, 899 N.E.2d 1274, 1280 (Ind. 2009). The exercise of reasonable diligence means that an injured party must act with some promptness where the acts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist. *Barrow v. City of Jeffersonville*, 973 N.E.2d 1199, 1206 (Ind. Ct. App. 2012), *reh'g denied*, *trans. denied*.

[13]    We observe that the Millers' notice of claim and their subsequent complaint alleged that, "on or about the 13th day of September 2013," CELP by means of chemical treatment did destroy or kill several trees on their property. Appellants' Appendix Volume II at 6, 47. However, the trial court found, and the evidence including Gee's completed daily application report establishes, that the herbicide was applied on the Millers' property on June 20, 2013. The record reveals that Gee applied herbicide to certain trees on June 20, 2013, and that, at the times the Millers met with Gee in late July of 2013, with Stephens in August 2013, and with Stephens and Goode on August 29, 2013, the parties discussed the damage to trees on the property caused by the herbicide

application. The evidence demonstrates that the Millers knew, prior to September 4, 2013, that trees on their property had been sprayed, that injury or loss had occurred, and that some claim against CELP might exist. Nevertheless, the Millers did not file their notice of claim until at least March 3, 2014, after the expiration of the 180-day period under the ITCA.

[14] To the extent the Millers assert there is nothing an earlier tort claim notice would have provided CELP, we note that the Indiana Supreme Court has observed that "mere actual knowledge of an occurrence, even when coupled with routine investigation, does not constitute substantial compliance." *Schoettmer v. Wright*, 992 N.E.2d 702, 707 (Ind. 2013). The Millers' discussions with CELP regarding tree damage on their property did not satisfy the ITCA's filing requirement. Further, to the extent the Millers, in the spring of 2014, observed that additional trees on their property had died or were dying, the Court has held that, for an action to accrue, it is not necessary that the full extent of the damage be known or even ascertainable, but only that some ascertainable damage has occurred. *Cooper Indus.*, 899 N.E.2d at 1280. While the Millers may not have observed the full extent of the damage to the trees on their property by August of 2013, the evidence demonstrates that some ascertainable damage had occurred by then and that they knew or in the exercise of ordinary diligence could have discovered that an injury had been sustained as a result of the June 20, 2013 herbicide application. The Millers met with CELP several times by August of 2013 and had observed that at least some trees had died. CELP offered compensation to the Millers in August

2013, and after initially agreeing Donald Miller later informed Stephens that the offered compensation was no longer agreeable. The Millers' notice of claim was not filed within the period required by the ITCA and thus their claim is barred. *See Peniel Grp., Inc. v. Bannon*, 973 N.E.2d 575, 583 (Ind. Ct. App. 2012) (holding the appellants' predecessor-in-interest became aware of soil contamination as early as 1997 and certainly no later than 2000, eight years before the action was commenced, and thus that the appellants were barred from bringing their claim), *trans. denied*.[7]

---

[7] The Millers also argue that the treatment by CELP "created a repetitive and continuing wrong, causing new damage as the chemical spread," Appellant's Brief at 10, and cite *Kerr v. City of South Bend*, 48 N.E.3d 348, 355 (Ind. Ct. App. 2015) (noting the plaintiff claimed gases entering his home were the result of the defendant's continued failure to properly maintain its sewer line and each time interfered with the use and enjoyment of his property and holding that the plaintiff suffered recurring losses rather than one individual loss and his claim for injury to his property was not entirely barred), and *Stickdorn v. Zook*, 957 N.E.2d 1014, 1022-1024 (Ind. Ct. App. 2011) (noting the plaintiffs alleged in part that the defendants' ongoing animal waste storage and disposal constituted a nuisance and holding that the defendants' manure pit became a continuing nuisance through its use and the recurring and continuing spreading of waste on their fields amounted to an intermittent and continuing nuisance and that the plaintiffs' property claims were not time-barred). The damage to the Millers' trees can be traced to one event, namely, the herbicide application by Gee on June 20, 2013. Gee testified that he did not apply chemicals on the Millers' property after that date. The evidence does not demonstrate that CELP's herbicide application was recurring or continual as contemplated by *Kerr* and *Stickdorn*. The Millers also cite *Monsanto Company v. Miller*, in which the court stated in part, in discussing the possible accrual dates of the plaintiffs' cause of action, that under Indiana law the presence of PCBs in a feed storage area would not have given rise to a right of action until the PCBs produced a prohibited contaminating effect and an insignificant amount of PCBs in milk would not create a cause of action, that the plaintiffs' cause of action did not accrue until the level of PCBs in the herd's milk first reached an impermissible level in violation of applicable tolerance levels, and that no damages were ascertainable until the plaintiffs' dairy products became unsaleable. 455 N.E.2d 392, 397 (Ind. Ct. App. 1983). As noted, the Millers knew by August 2013 that the herbicide application by CELP killed trees on their property and were on notice by then that some claim against CELP might exist. We find the cases to which the Millers cite to be distinguishable.

## *Conclusion*

[15]   Based upon the record, we affirm the trial court's order dismissing the Millers' complaint.

[16]   Affirmed.

Vaidik, C.J., and Bradford, J., concur.