# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 12 2019, 7:41 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian J. Paul
Faegre Baker Daniels LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Sean P. Burke
Weston E. Overturf
Mattingly Burke Cohen &
Biederman LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Subway Real Estate Corporation, *Appellant-Defendant,* <br><br> v. <br><br> GIV Green Tree Mall Investor, LLC, *Appellee-Plaintiff* | April 12, 2019 <br><br> Court of Appeals Case No. 18A-CC-1671 <br><br> Appeal from the Clark Circuit Court <br><br> The Honorable Andrew Adams, Judge <br><br> Trial Court Cause No. 10C01-1707-CC-891 |

**Baker, Judge.**

[1]    GIV Green Tree Mall Investor, LLC (Green Tree Mall), and Subway Real Estate Corporation (Subway) had a lease (the Lease) pursuant to which Subway rented retail space from Green Tree Mall to operate a restaurant. Subway cancelled the Lease, and Green Tree Mall sued for rent money due under the Lease. On summary judgment, the trial court ruled in favor of Green Tree Mall, concluding that the mall was entitled to rent under an acceleration provision and that it had attempted to mitigate its damages. Subway now appeals, arguing that the trial court erred by making such conclusions. Finding no error, we affirm.

## Facts

[2]    Green Tree Mall owns a mall in Clarksville. On July 8, 2004, Green Tree Mall's predecessor in interest, Macerich SCG Limited Partnership, entered into the Lease with Subway. Under the Lease, Subway rented space for a Subway sandwich restaurant. The Lease had an "Expiry Date" of June 30, 2014. Appellant's App. Vol. II p. 29.

[3]    The Lease contains the following relevant provisions:

> 10.3. Days and Hours of Operation. . . . If Tenant fails to comply with the provisions of this Section 10.3, then in addition to Landlord's other remedies under this Lease, Landlord shall have the right to collect from Tenant, in addition to the Fixed Minimum Rent and other Rent, a sum equal to fifty percent (50%) of the Fixed Minimum Rent (prorated on a daily basis) for each such full or partial day Tenant fails to comply with the provisions of this Section 10.3. Tenant acknowledges that its failure to comply with this Section 10.3 will cause Landlord to

suffer damages which will be difficult to ascertain and that the sum payable by Tenant under this Section 10.3 represents a fair estimate of such damages.

*\*\**

20.2.  No Offsets.  All covenants and agreements to be performed by Tenant under this Lease shall be performed by Tenant at Tenant's sole cost and expense and without any offset to or abatement of Rent, except as otherwise expressly provided in this Lease.  Tenant hereby waives any right to plead all compulsory counterclaims or offsets in any action or proceeding brought by Landlord against Tenant for any default.  This waiver shall not be construed, however, as a waiver of any right of Tenant to assert any non-compulsory counterclaims or offsets in any separate action brought by Tenant.  Notwithstanding anything in this lease to the contrary, Tenant's liability for rental defaults only (i.e., the failure to pay any Fixed Minimum Rent or Percentage Rent due hereunder) shall be limited to an amount which shall not exceed the lesser of:  (i) twelve (12) months Fixed Minimum Rent, or (ii) $40,000.00.

*Id.* at 42, 58.

Exhibit E, which is an addendum to the Lease, includes the following relevant provisions:

1.2.  Prevailing Provisions.  If there are any inconsistencies between the Lease and the provisions of this Exhibit E, the provisions of this Exhibit E shall prevail.

*\*\**

2.1.1. Article 20 (Landlord's Remedies). Notwithstanding anything to the contrary set forth in Article 20, upon the occasion and in connection with the exercise by Landlord of any of its remedies specified in Article 20, including but not limited to terminating this Lease, if Landlord shall elect to terminate the Lease, *all Rent reserved in this Lease for the remainder of the Term (through the Expiry Date) shall automatically accelerate and become immediately due and payable, subject, however, to Landlord's obligations to mitigate damages by re-letting the Premises.* In addition, all rights and remedies provided to Landlord in Article 20 or elsewhere in the Lease shall be without benefit of valuation and appraisement laws, which valuation and appraisement laws Tenant hereby waives.

*Id.* at 93 (emphasis added).

On December 6, 2013, the parties amended the Lease (the 2013 Amendments). The amendments include the following provisions:

1. TERM. Effective as of the date hereof (the "Effective Date"), the Term of the Lease is hereby extended for a period of 10 years (the "Extension Term") commencing on July 1, 2014, the date immediately succeeding the present expiration date, and ending on June 30, 2024, unless the Lease is sooner terminated pursuant to the provisions thereof. During the Extension Term, except as expressly provided for herein, all of the terms, conditions and provisions of the Lease shall be applicable and shall continue in full force and effect . . . .

\*\*\*

10. CONFLICT OF PROVISIONS. In the event of any conflict between the Lease and this Amendment, the terms, conditions and provisions of the latter shall govern. However, except as

herein expressly amended, all of the terms, covenants, conditions and provisions of the Lease shall continue in full force and effect.

*Id.* at 99, 102.

[6] On February 21, 2017, Subway notified Green Tree Mall that on February 28, 2017, it would close and vacate the leased space. Green Tree Mall notified Subway of Subway's defaults of the Lease; Subway did not cure its defaults. On June 30, 2017, Green Tree Mall invoked Exhibit E's acceleration provision and demanded $779,568.09 in damages, plus attorney fees and costs.

[7] On July 18, 2017, Green Tree Mall filed a complaint against Subway, alleging breach of contract. On November 1, 2017, Green Tree Mall filed a motion for summary judgment, arguing that it is entitled to $779,568.09 in damages, plus interest, attorney fees, and costs. Its evidence included a Declaration of Christine Cullen, Green Tree Mall's manager, in which Cullen stated, "[t]o date, notwithstanding its efforts to do so, Green Tree has not been able to relet the Premises." *Id.* at 125.

[8] On November 30, 2017, Subway filed a motion opposing summary judgment, arguing that genuine issues of material fact exist to preclude summary judgment, including the amount of damages owed and whether Green Tree Mall mitigated its damages as required by the Lease. On December 19, 2017, Green Tree Mall filed a reply in support of its motion for summary judgment, arguing in part that it has attempted to re-let the space. It submitted a

Supplemental Declaration of Christine Cullen, in which Cullen stated the following:

3.  We employ two people to assist us with leasing open facilities in Green Tree Mall, including the premises Subway leased (the "Premises") that is the subject of this litigation.

4.  Sherry Rawson, Green Tree Mall's Director of Leasing, . . . focuses on trying to find permanent lessees for Green Tree Mall. In the normal course of her responsibilities she contacts and communicates with national and regional food chains and attempts to get them interested in spaces within the Green Tree Mall, including the Subway Premises.

5.  Ms. Rawson attempted to interest several national chains in the Premises.  Specifically, she engaged in serious discussions about the Premises with Charley's Subs and Las Maria's and showed the Premises to these companies.  I have personally been involved in these efforts.  Despite these efforts, Green Tree has not yet found a national or regional food tenant to relet the Premises.

6.  Hillary Habermel, Green Tree's Specialty Leasing Manager, generally attempts to find temporary lessees for Green Tree Mall. In the normal course of her responsibilities she contacts and communicates with local merchants and attempts to get them interested in spaces within the Green Tree Mall.

7.  Ms. Habermel discussed the Premises with several potential tenants, but specifically remembers discussing the space with the following five businesses:  Go! Calendars, Beda Yves Martin-Barber Shop, Wayne Gullion; 0 Degrees, Eunice Marie Cronin, and Meyle's Bakery.  I have personally been involved with these

efforts. Despite these efforts, Green Tree has not yet found any local business to relet the Premises.

    8. Green Tree has and continues to attempt to interest national, regional, and local tenants in the Subway Premises either on a permanent or temporary basis.

    9. To date, notwithstanding its efforts to do so, Green Tree has not been able to relet the Premises.

*Id.* at 164-65. Green Tree Mall also submitted a Declaration of Hillary Habermel, its specialty leasing manager, in which Habermel stated the following:

    3. I generally attempt to find temporary lessees for Green Tree Mall. In the normal course of my responsibilities I contact and communicate with local merchants and attempt to get them interested in spaces within the Green Tree Mall.

    4. I have discussed Subway's premises that is the subject of this litigation (the "Premises") with several potential tenants, but specifically remember discussing the Premises with the following five businesses: Go! Calendars, Beda Yves Martin- Barber Shop, Wayne Gullion; 0 Degrees, and Eunice Marie Cronin.

    5. Despite these efforts, I have not yet found anyone to relet the Premises.

*Id.* at 167-68.

On January 11, 2018, a hearing took place on Green Tree Mall's motion for summary judgment. During the hearing, Green Tree Mall's counsel stated that it had submitted affidavits from two employees who had personal knowledge about the mall's efforts to mitigate damages. At the end of the hearing, the trial court advised the parties that they could submit supplemental briefing regarding the acceleration provision and mitigation of damages. On June 21, 2018, the trial court issued its order, making the following findings of fact:

> 19. The Affidavit of Hillary Habermel, Green Tree's Specialty Leasing Manager, states that she discussed the Premises with at least five potential tenants.
>
> 20. Subway owes Green Tree $363,615.77 in Fixed Minimum Rent; $98,308.83 in Tenant's Share of Costs; $71,033.57 in Tenant's Share of Real Estate Taxes; $66,237.86 in Promotion Fund Charges, and $180,372 in Damages . . . .
>
> ***
>
> 22. Green Tree's total damages recoverable totals $812,002.64 plus interest thereon at the rate set forth in the Lease.

Appealed Order p. 6 (citation omitted). The trial court then made the following conclusions of law:

> The parties' principal agreement provides the remedy for Subway's default. Green Tree argues that Exhibit E to the Lease controls, which allows Green Tree to accelerate and recover all its contractual damages. Subway, on the other hand, argues that Article 20.2's contractual limitation of $40,000 prevails.

> The Court agrees with Green Tree that Exhibit E prevails for several reasons. The language of Exhibit E contemplates potential inconsistencies between the Lease and Exhibit E and specifically states, "If there are any inconsistencies between the Lease and the provisions of this Exhibit E, the provisions of this Exhibit E shall prevail." Because courts are required to enforce unambiguous contractual language, the Court will do so here.
>
> This conclusion is bolstered by the fact that Exhibit E specifically amends and supplements Article 20.2 on which Subway relies. Exhibit E plainly states as such: "The following Sections of the Lease are amended and supplement . . . Article 20 (Landlord's Remedies)."

*Id.* at 8 (citations omitted). The trial court found that Green Tree Mall was entitled to recover $812,002.64 plus pre-judgment interest from Subway. The trial court noted "that Exhibit E places on Green Tree an ongoing duty to mitigate its damages by making a good faith attempt to reasonably re-let the premises." *Id.* at 10. Subway now appeals.

# Discussion and Decision

## I. Standard of Review

[10] Our standard of review on summary judgment is well settled:

> The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012). Once these two requirements are met by the moving party, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts.

> *Id.* Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party. *Id.* Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows there is no genuine issue of material fact and that the moving party deserves judgment as a matter of law. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 39 (Ind. 2002).

*Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016).

## II. Lease Interpretation

Subway first argues that the trial court incorrectly found that the Lease's term ended on June 30, 2024, and as a result, incorrectly applied the acceleration provision when calculating Green Tree Mall's damages. The construction of a written contract is generally a question of law. *The Winterton, LLC v. Winterton Investors, LLC*, 900 N.E.2d 754, 759 (Ind. Ct. App. 2009). When interpreting a contract, we attempt to determine the intent of the parties at the time the contract was made. *Id.* When the language of the contract is unambiguous, the parties' intent is determined from the four corners of the document. *Id.* "The unambiguous language of a contract is conclusive upon the parties to the contract as well as upon the court." *Id.* A contract is ambiguous when a reasonable person could find its terms susceptible to more than one interpretation. *Id.* If a contract is ambiguous, the court may consider extrinsic evidence, and the construction of the contract becomes a matter for the trier of fact. *Id.*

[12] Specifically, Subway asserts that the trial court misinterpreted the 2013 Amendments to extend the lifespan of the Lease's rent-acceleration provision. Subway points out that the 2013 Amendments created a new defined term—the Extension Term—to describe the ten-year renewal period of the Lease, yet did not alter the Expiry Date. Therefore, Subway argues, the 2013 Amendments did not extend the acceleration provision beyond the Lease's original end date of June 30, 2014.

[13] Exhibit E contains the acceleration provision, which becomes effective in the event of a default. Exhibit E clearly states that the acceleration provision applies "for the remainder of the Term (through the Expiry Date)[.]" Appellant's App. Vol. II p. 93. The 2013 Amendments provide that "the Term of the Lease is hereby extended for a period of 10 years (the 'Extension Term')[.]" *Id.* at 99. By extending the Lease's "Term" for ten years, the 2013 Amendments extended the Lease's provisions—including the obligations of Exhibit E. To interpret the amendments as Subway requests would lead to an impractical result in which only the amendments, rather than the Lease itself along with Exhibit E and the amendments, would govern the parties' agreement. Because the 2013 Amendments extended the terms of the Lease for an additional ten years, Exhibit E's acceleration provision remained in effect through the extended term, which ended on June 30, 2024.

[14] The trial court did not err by interpreting the language in the Lease, Exhibit E, and the 2013 Amendments, to find that Subway's rent and fees were

accelerated and became due in the event of a default and termination of the Lease. Consequently, the trial court did not err in its calculation of damages.

## III. Mitigation of Damages

[15] Subway next contends that the trial court erred by concluding that Green Tree Mall met its prima facie summary judgment burden of showing that there was no genuine issue of material fact with respect to whether Green Tree Mall mitigated its damages pursuant to the Lease.

[16] First, however, we must address Subway's argument that the trial court erred by allowing Green Tree Mall to file a reply and supplemental designation of evidence regarding the issue of mitigation. Subway contends that the trial court should not have allowed the mall to submit supplemental declarations to compensate for what Subway considers the mall's deficient initial designation of evidence.

[17] We disagree. Subway neither moved to strike Green Tree Mall's reply or supplemental evidence, nor did Subway object to the reply or supplemental evidence at the hearing below or in supplemental briefing. Regardless, our Court has previously addressed this issue:

> Trial Rule 56 neither expressly permits nor precludes such a reply brief. The supreme court has, in other instances, either expressly permitted or expressly prohibited reply briefs. Compare T.R. 56 with App. R. 54(D) ("Reply briefs on Rehearing are prohibited.") and App. R. 46(C) ("The appellant may file a reply brief responding to the appellee's argument.") In Trial Rule 56, however, the supreme court has remained silent on the specific

subject of a reply brief. The Rule does, however, provide for affidavits submitted in support or in opposition to summary judgment to be supplemented or opposed by depositions, answers to interrogatories, and further affidavits. T.R. 56(E). Clearly, additional evidence after the initial filings is contemplated by the Trial Rule, . . .

*Spudich v. N. Ind. Pub. Serv. Co.*, 745 N.E.2d 281, 287 (Ind. Ct. App. 2001). *See also Auto-Owners Ins. Co. v. Benko*, 964 N.E.2d 886, 889-90 (Ind. Ct. App. 2012) (trial court did not err by denying motion to strike supplemental designation of evidence); *Reed v. City of Evansville*, 956 N.E.2d 684, 690 (Ind. Ct. App. 2011) (trial court may permit affidavits accompanying motion for summary judgment to be supplemented by additional affidavits accompanying the movant's reply). Accordingly, the trial court did not err by allowing Green Tree Mall to file a reply and supplemental designation of evidence.

[18] Subway next contends that the evidence Green Tree Mall designated with its motion for summary judgment regarding its mitigation of damages— specifically, Cullen's statement that, "[t]o date, notwithstanding its efforts to do so, Green Tree has not been able to relet the Premises," appellant's app. vol. II p. 125—was insufficient to foreclose a genuine issue of material fact about whether Green Tree Mall reasonably tried to mitigate its damages. Yet, as discussed above, Green Tree Mall's evidence included more than this statement: the mall's supplemental evidence included affidavits by both Cullen and Habermel in which each person stated that the mall had attempted to lease the space to at least five different businesses. The trial court cited Habermel's

affidavit in its order to support its conclusion that Green Tree Mall was meeting its ongoing duty to mitigate its damages.

[19] According to Subway, Green Tree Mall should have provided more evidence of its mitigation of damages, such as information about its efforts to re-let the space or about the rent that it offered to possible new tenants. And it contends that it did not respond with its own designated evidence because Green Tree Mall's designated evidence did not negate any factual issue regarding its duty to mitigate damages. We see the matter differently. Green Tree Mall satisfied its prima facie burden by designating two affidavits as evidence, each of which established that it had attempted to mitigate its damages, thereby satisfying its prima facie burden. Subway had an opportunity to address this issue during the hearing on Green Tree Mall's motion for summary judgment and in the supplemental briefing that the trial court requested. It did not do so. As a result, based on the evidence in the record, there was no genuine issue of material fact before the trial court. The trial court did not err by finding that Green Tree Mall was meeting its ongoing duty to mitigate its damages.

[20] The judgment of the trial court is affirmed.

May, J., and Tavitas, J., concur.